[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12265
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 31, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:05-cv-00058-MP-AK


JOHN D. SYMONDS,

Plaintiff - Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 31, 2011)

Before EDMONDSON, WILSON and BLACK, Circuit Judges.

PER CURIAM:

John Symonds appeals the district court's order affirming the Social Security Commissioner's denial of his application for disability insurance benefits for time prior to 11 July 2006. No reversible error has been shown; we affirm.

Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Under this limited standard of review, we may not make fact-findings, reweigh the evidence, or substitute our judgment for that of the Administrative Law Judge ("ALJ"). Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). We review de novo the district court's determination on whether substantial evidence supports the ALJ's decision. Wilson, 284 F.3d at 1221.

A person who applies for Social Security disability benefits must prove that

he is disabled.  See 20 C.F.R. § 404.1512.[1]  The Social Security Regulations

outline a five-step sequential evaluation process for determining whether a

claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must evaluate whether

(1) the claimant engaged in substantial gainful work; (2) the claimant has a severe

impairment;[2] (3) the severe impairment meets or equals an impairment on the

Listings of Impairments; (4) the claimant has the residual functional capacity

("RFC") to perform his past relevant work; and (5) whether, in the light of the

claimant's RFC, age, education, and work experience, there are other jobs the

claimant can perform.  Id.

On appeal, Symonds argues that the ALJ's conclusion that he was not

disabled before 11 July 2006, was arbitrary, capricious, and unsupported by

substantial evidence.[3]  He asserts that the record does not demonstrate that his

health or RFC declined between 26 May 2001, his alleged date of onset, and 11

July 2006.

---

[1]Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

[2]Here, the ALJ concluded that Symonds had a severe impairment of lumbar spondylolysis with chronic back pain.

[3]Because the ALJ concluded that Symonds was last insured on 30 June 2005, Symonds must establish that he was disabled on or before that date to qualify for disability insurance benefits.  See Moore, 405 F.3d at 1211.

On 26 May 2001, Symonds suffered a work-related injury to his lower back, and underwent back surgery a few months later. One of his treating physicians reported that Symonds reached maximum medical improvement on 26 November 2002, and was limited from bending, squatting, lifting more than ten pounds, standing for more than one hour, and repetitive use of his legs to operate controls. In March 2005, another treating physician reported that -- although Symonds complained of lower back pain -- his gait, muscle strength, and muscle tone were normal, and he had a normal range of motion in his back. Based on this record, sufficient evidence supports the ALJ's conclusion that Symonds was capable of performing sedentary physical exertion before 11 July 2006.[4]

On 11 July 2006, Symonds was involved in a car accident; and he developed three herniated discs in his cervical spine. He testified that, because of the newly-herniated discs, and the new pain in his left side, hip, and leg, his condition was worse after the accident. His medical records also demonstrate that his back pain and right leg weakness were worse after the accident and, thus, support the ALJ's conclusion that Symonds's health declined after the accident.

Symonds also argues that the ALJ did not give proper weight to the opinion

---

[4]The ALJ determined that, before 11 July 2006, Symonds was capable of lifting, carrying, pushing, and pulling ten pounds occasionally, standing and walking for an hour at a time for about four hours a day, and sitting for about six hours a day with normal breaks.

of his treating physician, Dr. Lipnick, that Symonds's impairment rating was 28 percent of the whole person. Absent "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis, and medical evidence of a treating physician. Crawford, 363 F.3d at 1159.

The record demonstrates that the ALJ gave substantial weight to Dr. Lipnick's medical opinion. The ALJ concluded that, before 11 July 2006, Symonds could perform sedentary physical exertion, including lifting, carrying, pushing, and pulling ten pounds occasionally, standing and walking for one hour at a time for about four hours a day, and sitting for six hours a day with normal breaks. This conclusion was consistent with Dr. Lipnick's assessment that, as of 8 December 2002, Symonds was limited from bending, squatting, lifting more than ten pounds, standing for more than one hour, and repetitive use of his legs to operate controls. Although the ALJ did not rely on Dr. Lipnick's medical opinion that Symonds had a 28 percent permanent physical impairment to the whole body, that impairment rating was calculated based on the Florida Uniform Permanent Impairment Rating Schedule, not the Social Security Act's definition of disability. Moreover, the ultimate issue of disability is left to the determination of the Commissioner; and a statement by a medical source that a claimant is "disabled" or "unable to work" is not binding on the ALJ. 20 C.F.R. § 404.1527(e).

5

Symonds also argues that the ALJ erred when the ALJ determined that his testimony about his subjective experience of pain was not credible. Credibility determinations about subjective testimony generally are reserved to the ALJ. See Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987). But "[i]f the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

Here, the ALJ concluded that -- although Symonds's medically determinable impairment could reasonably be expected to produce the alleged symptoms -- his statements about the intensity, duration, and limiting effects of his pain before 11 July 2006, were "not entirely credible." We conclude that substantial evidence supports the ALJ's adverse credibility determination. In summarizing Symonds's medical records, the ALJ noted that, although Symonds had a limitation in straight leg raising on the right, he had "more facial grimacing than guarding," "[i]maging studies did not show a clear reason for his symptoms," and "the symptoms might be exaggerated or not terribly physiologic." The ALJ also indicated that Symonds's testimony about the limiting effects of his symptoms was contradicted by his testimony that his daily activities included vacuuming, caring for his children, and helping his wife with the grocery

shopping.[5] See 20 C.F.R. § 404.1529(e)(3)(i) (providing that the ALJ may consider a claimant's daily activities in evaluating the intensity and persistence of pain symptoms).

AFFIRMED.

---

[5]In a 21 July 2006 decision addressing Symonds's initial application for disability insurance benefits, the ALJ also concluded that Symonds's testimony about his pain was not credible based on (1) the objective medical evidence; (2) his "attempts to obtain narcotic medications which suggest a possible reason to exaggerate his pain complaints;" and (3) positive tests for cocaine and marijuana use.